WALTER J. ROTHSCHILD, Judge.
12Pefendant, Michael Miller, was indicted by a grand jury on October 8, 2009, on one count of aggravated rape in violation of LSA-R.S. 14:42, and one count of aggravated incest in violation of LSA-R.S. 14:78.1. Defendant was arraigned and pled not guilty. On December 8, 2010, a 12-person jury found him guilty as charged on both counts.
Defendant filed a motion for post-verdict judgment of acquittal and a motion for new trial, both of which the court denied. Defendant was sentenced to life imprisonment without benefit of parole, probation or suspension of sentence on the aggravated rape conviction, and he was sentenced to 20 years imprisonment at hard labor on the aggravated incest of a child conviction. The court ordered the sentences to run consecutively. Defendant made an oral motion to reconsider ¡.-¡sentence, which the court denied. By this appeal, defendant asserts two assignments of error.
At trial, Sergeant James Wine of the Jefferson Parish’s Sheriffs Office testified that on December 4, 2007, he responded to a report of sexual abuse. He met with the victim, J.B.,[1] and his father, Ja.B. J.B. alleged that he had been sexually abused approximately two to three years prior by defendant, Mike Miller, at an address on Central Avenue. J.B. lived in two different apartments on Central Avenue and could not remember either address. Sergeant Wine drove J.B. to Central Avenue, and J.B. showed him the location where the abuse occurred.
The alleged sexual abuse in this case occurred when J.B. was living with his mom, S.B., and his stepfather, Mike Miller, between May 20, 2002 and March 8, 2004. J.B. testified at trial.[2] J.B. recalled the first time the abuse occurred when he was “about six” years old. J.B. stated, “[Defendant] called me into the living room. He was laying (sic) down and he exposed his penis to me and told me to suck it.” J.B. did as he was told. J.B. stated that defendant “spermed out” and then “he would wipe it on a rag.” J.B. testified that this occurred more than once. When asked where the abuse occurred, J.B. responded, “On Central.”
J.B. also recalled other instances of abuse that occurred when he was seven years old. J.B. stated, “I was to kneel on the couch, pull down my pants, and he put his penis through my legs and pushed it back and forth.” When asked how defendant would push it back and forth, J.B. responded, “He would hump.” J.B. testified that sometimes “there was pornography on the TV” during the abuse. When asked what was happening on the tape, J.B. responded that “a male and pfemale were having sex.” J.B. testified that the abuse occurred while his mom was at work. Defendant threatened to kill J.B. if *614 he told anyone. J.B. testified that the abuse stopped when defendant went to jail in 2004, when J.B. was about eight years old.
The victim’s father, Ja.B., testified that his son, J.B., was born on May 20, 1996, when Ja.B. was 16. Ja.B. was convicted in 1997, when he was 17, and was in prison until October of 2002. Ja.B. testified that a few months after he was released from prison, J.B., his mom, S.B., and defendant moved to Central Avenue. They lived there for three to six months before moving into another apartment on Central Avenue. Ja.B. testified that he initially saw J.B. on the weekends, but it started to become an issue when they moved to the new apartment on Central Avenue. He stated that when speaking to J.B.’s mother, S.B., he could hear defendant in the background not agreeing to the visitation. He testified that after defendant moved out in 2004, he could see his son “anytime [he] wanted.”
Ja.B. further testified that J.B. began living with him in September of 2007 due to his son’s behavioral issues. J.B.’s behavior worsened, and J.B. began “showing his privates” at school. Finally, at the suggestion of others, Ja.B. asked his son if anyone had ever abused him. J.B. responded affirmatively. J.B. told his father that he had been abused by defendant, “Mr. Mike.” Ja.B. then called the St. Tammany Parish Sheriffs Office, and they informed him that he needed to take J.B. to Jefferson Parish, where the abuse occurred. That evening, Ja.B. drove J.B. to Jefferson Parish, and they met with Sergeant Wine.
The victim’s mother, S.B., testified that she married defendant in September 2001, when J.B. was five years old. After they married, J.B. lived primarily with rela-fives. In 2002, S.B. and defendant moved into an apartment on Central |fiAvenue, and J.B. began staying with them more often. At that time, S.B. testified she was working at a daycare, but defendant was not working.
They subsequently moved into another apartment on Central Avenue.[3] S.B. testified that defendant would walk J.B. to school in the morning and afternoon. Additionally, S.B. testified that J.B. began to have behavioral problems at Jefferson Elementary School when they were living on Central Avenue.
Erika Dupepe of the Jefferson Children’s Advocacy Center (“CAC”) testified that she interviewed J.B. on April 16, 2008, at the CAC. She testified regarding the role of the CAC and her qualifications as a forensic interviewer. She further testified about the interview process in general and the procedures that were followed when she interviewed J.B. The DVD of the CAC interview was then played for the jury.
Dr. Adrienne Atzemis testified as an expert in the field of child abuse pediatrics. Dr. Atzemis testified regarding possible reasons for a child’s delayed disclosure of sexual abuse and behavioral problems that result from sexual abuse. She further testified that she examined J.B. at Children’s Hospital on May 1, 2008. She stated that J.B. “disclosed a clear and detailed history of sexual abuse by Mr. Miller.” She stated:
He disclosed two types of contact. The first was penile/oral contact, meaning that Mr. Mike’s penis was in his mouth or his mouth was on Mr. Mike’s penis. And then also penile/thigh contact. He was saying that it was in between his legs. The penis was touching his thighs.
*615 She farther stated that J.B. had disclosed that defendant threatened to hurt him “if he told about what happened.”
Defendant was the defense’s only witness. Defendant denied watching pornography with J.B. and denied abusing J.B.
|fiBy this appeal, defendant claims the evidence was legally insufficient to convict him of aggravated rape and aggravated incest. Defendant argues that J.B.’s testimony had a number of inconsistencies. First, defendant contends that J.B. was inconsistent in his accounting of how defendant sexually abused him. Second, defendant argues that J.B. was inconsistent as to where the abuse occurred. Third, defendant argues that J.B. made inconsistent statements regarding whether a pornographic video was playing on the TV. Finally, defendant argues that J.B.’s statement concerning a washing machine at one of the apartments illustrates that J.B. was not being truthful.
Defendant further contends that the inconsistencies in J.B.’s testimony, as well as certain language he used, indicates that he was coached. Defendant also argues that J.B.’s biological father, Ja.B., was angry with defendant, suggesting that Ja.B. fabricated the allegations of abuse in retaliation.
In conclusion, defendant argues that J.B.’s testimony was the only evidence that defendant committed a crime and it had numerous inconsistencies. Defendant claims that these inconsistencies were enough to create reasonable doubt.
In response, the State set forth the law and the testimony elicited at trial. The State argues that the jury heard and weighed the testimony of the witnesses at trial. Furthermore, the State contends that the jury heard defendant’s closing argument in which he discussed what he believed to be inconsistencies in J.B.’s testimony, and the jury heard defendant’s theories as to why J.B. would devise such allegations. The State argues:
As the verdict demonstrates, the jury found the testimony of the State’s witnesses to be credible and the evidence sufficient to find the defendant guilty beyond a reasonable doubt as to both charged counts. Considering the consistent and detailed account of the offenses recounted by the victim, the verdict was well-founded.
|7The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Under Jackson, a review of a criminal conviction record for sufficiency of evidence does not require a court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. A reviewing court is required to consider the whole record and determine whether a rational trier of fact would have found guilt beyond a reasonable doubt. State v. Bolden, 03-0266 (La.App. 5 Cir. 7/29/03), 852 So.2d 1050, 1056.
First, it is necessary to establish whether the elements of aggravated rape and aggravated incest were established at trial. Defendant was convicted of the aggravated rape of J.B. in violation of LSA-R.S. 14:42. At the time the abuse first occurred, LSA-R.S. 14:42 provided in pertinent part:
A. Aggravated rape is a rape committed .... where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
*616 (4) When the victim is under the age of twelve years. Lack of knowledge of the victim’s age shall not be a defense.
Rape is defined by LSA-R.S. 14:41(A) as “the act of anal, oral, or vaginal sexual intercourse with a male or female person committed without the person’s lawful consent.” Oral sexual intercourse is defined, in pertinent part, as: “The intentional engaging in any of the following acts with another person: (2) the touching of the anus or genitals of the offender by the victim using the mouth or tongue of the victim.” LSA-R.S. 14:41(0(2).
|sThus, in order to convict defendant of aggravated rape by oral sexual intercourse, the jury must have found: (1) the defendant intentionally engaged in the touching of the anus or genitals of the defendant using the mouth or tongue of the victim; and (2) the act was without the lawful consent of the victim because he was under the age of 12 years at the time of the offense.
Defendant was also convicted of aggravated incest in violation of LSA-R.S 14:78.1, which provides in pertinent part:
A. Aggravated incest is the engaging in any prohibited act enumerated in Subsection B with a person who is under eighteen years of age and who is known to the offender to be related to the offender as any of the following biological, step, or adoptive relatives: child ...
B. The following are prohibited acts under this Section:
(1).... sexual battery, ...
Sexual battery is defined by LSA-R.S. 14:43.1. At the time the abuse occurred, LSA-R.S. 14:43.1(A) stated:
The intentional engaging in any of the following acts with another person, who is not the spouse of the offender, where the offender acts without the consent of the victim, or where the other person has not yet attained fifteen years of age and is at least three years younger than the offender:
(1) The touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender; or
(2) The touching of the anus or genitals of the offender by the victim using any instrumentality or any part of the body of the victim.
Thus, in order to convict defendant of aggravated incest, the jury must have found that: (1) the defendant committed a sexual battery upon the victim; (2) the victim was under eighteen years of age; (3)the victim was the stepson of the defendant; and (4) the defendant had knowledge of the relationship.
Defendant does not dispute that J.B. was his stepchild or that he was under the age of 18; therefore, those elements were met. At trial, J.B. testified that | ¿‘[Defendant] called me into the living room. He was laying (sic) down and he exposed his penis to me and told me to suck it. And then I sucked it.” J.B. testified that he was “about six” years old when this occurred. J.B. also recalled other instances of abuse that occurred when he was seven years old. J.B. stated, “I was to kneel on the couch, pull down my pants, and he put his penis through my legs and pushed it back and forth.” When asked how defendant would push it back and forth, J.B. responded, “He would hump.” Based on J.B.’s testimony, the elements for aggravated rape and aggravated incest were established at trial.
Second, it is necessary to determine if the victim’s testimony, in light of the alleged inconsistencies, was sufficient to support defendant’s conviction.
The credibility of witnesses is within the sound discretion of the trier of fact, who *617 may accept or reject, in whole or in part, the testimony of any witness. State v. Rowan, 97-21, p. 7 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052, 1056. Where there is conflicting testimony about factual matters, the resolution of which depends on a determination of credibility of the witnesses, this is a matter of the weight of the evidence, not its sufficiency. State v. White, 472 So.2d 130, 132 (La.App. 5 Cir.1985). Furthermore, the credibility of witnesses will not be reweighed on appeal. Rowan, supra. “[T]he Jackson standard does not serve as a vehicle for a reviewing court to second guess the rational credibility determinations of the fact finder at trial.” State v. Juluke, 98-341, p. 4 (La.1/8/99), 725 So.2d 1291, 1293, writ denied, 01-3171 (La.9/30/02), 825 So.2d 1190.
The testimony of the victim alone can be sufficient to establish the elements of a sexual offense, even where the State does not introduce medical, scientific or physical evidence to prove the commission of the offense. State v. Hawkins, 99-217 (La.App. 5 Cir. 7/2/99), 740 So.2d 768, 769. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’ | ^testimony, if believed by the trier of fact, is sufficient support for a requisite factual finding. State v. Ruffin, 02-798 (La.App. 5 Cir. 12/30/02), 836 So.2d 625, 630, writ denied, 03-3473 (La.12/10/04), 888 So.2d 831.
In the present case, defendant argues that J.B.’s testimony had a number of inconsistencies. First, defendant contends that J.B. was not consistent in his accounting of how defendant sexually abused him. Defendant argues that, in one version, J.B. stated that defendant “made him suck his penis.” And, in another version, J.B. stated that defendant “put his penis between his thighs and moved back and forth.” At trial, J.B. testified that the sexual abuse occurred more than once. J.B. recalled the first time he was abused when he was six years old. J.B. also recounted another instance of abuse that occurred when he was seven. J.B.’s testimony at trial regarding the different ways he was abused, what age it occurred and that it occurred more than once was consistent with Dr. Atzemis’ report.
Second, defendant argues that J.B. was inconsistent as to where the abuse occurred. Defendant contends that J.B. told Sergeant Wine that the abuse only occurred at 236 Central Avenue, but then told Erika Dupepe from CAC that the abuse occurred in Texas and two places in Jefferson Parish. Sergeant Wine testified that he drove J.B. to Central Avenue so they could pinpoint the actual address where the abuse occurred. Sergeant Wine testified that J.B. did point to a particular location, and Sergeant Wine was “pretty sure”- it was 236 Central Avenue. Sergeant Wine further stated, “I’m not really sure how the conversation took place, but he did say that he didn’t — he said at the second address, 689 Central, there was no second — no more abuse.” The defense attorney then stated, “And you took that to mean that’s when the abuse stopped?” Sergeant Wine responded, “Yes, sir.”
|nDef'endant contends that J.B. was inconsistent as to whether the abuse only occurred at 236 Central Avenue or occurred at both apartments on Central Avenue and in Texas. At trial, Sergeant Wine was never asked if J.B. reported the abuse occurring in Texas, and, at trial, J.B. was never asked if the abuse occurred in Texas. Furthermore, the defense counsel’s questions and Sergeant Wine’s testimony concerning the Central Avenue apartments imply that J.B. moved to 689 Central Avenue after living at 236 Central Avenue. But, S.B. testified that they lived at 689 Central Avenue before moving to 236 Central Avenue. Additionally, J.B. told Dr. *618 Atzemis that the abuse occurred in Texas and two places in Jefferson parish, which is consistent with J.B.’s statement in the CAC interview. At trial, when asked where the abuse occurred, J.B. just replied, “On Central.”
Third, defendant argues that J.B. made inconsistent statements regarding whether a pornographic video was playing on the TV. Defendant contends that J.B. statements are inconsistent because J.B. stated that he had been “exposed to porn” in the CAC interview, but then told Dr. Atzemis he couldn’t remember if a pornographic video was on the TV. At trial, the defense attorney asked Dr. Atzemis how J.B. responded when asked if anyone had ever exposed him to pornography. Dr. Atzemis responded,
So I asked. “Did anyone ever show you a video or something like that?” And he said, “Uhm, I think.” And I said, “Tell me about that.” And he goes, “Well, it’s hard to remember.” And I said, “Okay. Well, what makes you think that someone showed you something?” And then he said, “Uhm, I don’t know.”
The defense attorney then stated, “. at that point you pretty much concluded that you didn’t feel he had been” exposed to pornography. And, Dr. Atzemis responded, “No. I didn’t come to an assumption that he had been exposed to pornography. I think it’s (sic) potential but I didn’t conclude that that happened.” The record shows that Dr. Atzemis didn’t reach a conclusion as to whether J.B. had | ipbeen exposed to pornography. J.B. testified at trial that sometimes “there was pornography on the T.V.” during the abuse, which was consistent with J.B.’s statement in the CAC interview.
Finally, defendant argues that J.B.’s statement regarding a washing machine did not make sense. J.B. told Dr. Atzemis that defendant put the rag in the washing machine, but defendant contends they never lived anywhere with a washing machine in the apartment. Defendant is referring to Dr. Atzemis’ testimony on cross-examination, in which she states, “I asked him if anything came out of the private area, and he said that there was white stuff that came out. I asked where it went, and he said onto I think a wash rag or rag of some kind that then went into the washing machine.” Defendant contends this illustrates that J.B. is not telling the truth because there was not a washing machine in the apartment. However, S.B. testified that there was not a washing machine in either of the Central Avenue apartments, but that 236 Central Avenue did have a small facility downstairs with a washing machine.
Defendant contends that J.B.’s testimony indicates that he was coached. Defendant argues that, during the CAC interview, J.B. was unable to describe sex, yet J.B. made use of an adult phrase when he stated that he had been “exposed to porn.” Defendant argues that “the use of such an adult phrase ought to have implied coaching to the forensic interviewer if she was fact gathering in a neutral manner.”
Defendant further argues that J.B.’s biological father, Ja.B., was angry with defendant, suggesting that Ja.B. fabricated the allegations of abuse in retaliation. Ja.B. was released from prison in 2002 and was on parole in 2003. Ja.B. went to Mississippi in violation of his parole, and defendant reported Ja.B. to his parole officer. Defendant contends that Ja.B. was incensed, and suggests that it was not a | ^coincidence that J.B. did not report being sexually abused until after living with his father for a few months.
At trial, Ja.B. testified that he did go to Mississippi in violation of his parole, and defendant had informed his parole officer. *619 But, Ja.B. stated that it did not cause him any problems with his parole. He also denied ever telling defendant that he was going to get him back. Defendant testified that in 2003, he informed Ja.B.’s parole officer that Ja.B. had been going to Mississippi in violation of his parole. Defendant testified that Ja.B. was upset, and he “threatened to get even with me, but that was quite awhile ago.”
In State v. Singleton, 05-622, p. 5-7 (La.App. 5 Cir. 1/31/06), 922 So.2d 647, 650-51, the defendant challenged his conviction for aggravated rape on the basis that the only evidence was the victim’s unbelievable testimony. This Court admitted there were some inconsistencies regarding when the victim told her mother about the incident, but concluded that the victim consistently described the details of the incident through her statements, interviews, and her testimony. This Court concluded the trier of fact made a credibility determination, which is not to be reassessed on appeal, and that the evidence proved the essential elements of aggravated rape beyond a reasonable doubt. Singleton, 05-622 at 7, 922 So.2d at 651.
Furthermore, in State v. Gaddis, 07-395, pp. 11-12 (La.App. 5 Cir. 11/13/07), 973 So.2d 21, 27-28, writ denied, 08-156 (La.10/10/08), 993 So.2d 1277, the defendant argued the victims’ testimony should not have been believed because of inconsistencies. This Court acknowledged there were some differences in what one of the victims said during her CAC interview and her trial testimony. Citing State v. Simmons, 03-20, p. 14 (La.App. 5 Cir. 4/29/03), 845 So.2d 1249, 1258, this Court noted that the discrepancies were not necessarily indicative of untruthfulness or incompetence.[4] Gaddis, 07-395 at 11, 845 So.2d at 27 n. 14. This Court concluded that despite some slight inconsistencies regarding some of the details, both victims described numerous events that were substantially the same. This Court found the jury’s decision to believe the victims’ account of the events over the defendant’s testimony was rational and that the State proved the essential elements of aggravated rape beyond a reasonable doubt.
In the present case, although there may have been some slight inconsistencies in J.B.’s testimony, interviews and statements, the jury made a credibility determination and chose to believe the victim. A review of the record reflects that the jury’s decision to believe the victim over the defendant was rational. Thus, viewing the evidence in the light most favorable to the prosecution, we find the State proved the essential elements of aggravated rape and aggravated incest beyond a reasonable doubt.
Defendant next argues that the trial judge’s imposition of consecutive sentences was excessive. The trial judge sentenced defendant to life imprisonment for the aggravated rape conviction and an additional 20 years imprisonment for the aggravated incest conviction. The sentences were ordered to run consecutively. Defendant contends that the trial judge did not provide an explanation for the consecutive nature of the sentences, and that it is “on principle excessive.”
*620 The State responds that the trial court did not impose a constitutionally excessive sentence, arguing that the trial judge articulated reasons for the sentences imposed and that the record more than justifies those sentences. The State argues:
The defendant repeatedly sexually victimized a very young child. Rather than protecting the stepson left in his care, the defendant |1sexploited the victim for his own sexual gratification on multiple occasions and threatened to kill the child if he told anyone. The defendant’s actions caused serious emotional and behavioral issues to manifest in the boy’s conduct years later. Furthermore, the defendant had an extensive criminal history with multiple convictions.
Thus, the State argues that, “given the background of the defendant and the nature and circumstances of his offenses,” the consecutive sentences were not constitutionally excessive.
Additionally, the State argues that, even if this Court were to find the consecutive nature of the sentences excessive, remand would serve no practical purpose since defendant is already serving a life sentence without benefit of parole, probation or suspension of sentence on his aggravated rape conviction, citing State v. Bradley, 02-1130 (La.App. 5 Cir. 3/11/03), 844 So.2d 115.
A sentence is excessive, even if it is within the statutory limits, if it is grossly disproportionate to the severity of the offense or is nothing more than the needless and purposeless imposition of pain and suffering. State v. Wickem, 99-1261 (La.App. 5 Cir. 4/12/00), 759 So.2d 961, 968, writ denied, 00-1371 (La.2/16/01), 785 So.2d 839. The trial judge is afforded wide discretion in determining a sentence, and the court of appeal will not set aside a sentence for excessiveness if the record supports the sentence imposed. State v. McCorkle, 97-966 (La.App. 5 Cir. 2/25/98), 708 So.2d 1212, 1219.
In reviewing a sentence for ex-cessiveness, this Court must consider the punishment and the crime in light of the harm to society and gauge whether the penalty is so disproportionate as to shock our sense of justice, recognizing at the same time the wide discretion afforded the trial judge in determining and imposing sentence. State v. Brown, 99-172 (La.App. 5 Cir. 9/28/99), 742 So.2d 1051, 1056, writ denied, 99-3148 (La.4/20/00), 760 So.2d 340. The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate. State v. Watts, 99-311, (La.App. 5 Cir. 8/31/99), 746 So.2d 58, 64, writ denied, 99-2733 (La.3/24/00), 758 So.2d 145.
Regarding the imposition of consecutive sentences, LSA-C.Cr.P. art. 883 provides, in pertinent part, as follows:
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently.
A trial judge retains discretion to impose consecutive sentences on the basis of factors such as the offender’s past criminal acts, the violent nature of the charged offenses, or the risk that the defendant may pose to the safety of the community. State v. Williams, 08-556, p. 9 (La.App. 5 Cir. 1/13/09), 8 So.3d 3, 9, writ denied, 09-330 (La.11/6/09), 21 So.3d 298. If the trial court elects to impose consecutive sentences for crimes arising from a single course of conduct, it must articulate *621 the reasons it feels the sentence is necessary. Id. Although the imposition of consecutive sentences requires particular justification when the crimes arise from a single course of conduct, consecutive sentences are not necessarily excessive. Id., citing Bradley, supra.
At the sentencing hearing in the present case, the trial judge stated as follows:
All right. Let me just say I’ve considered the sentencing guidelines contained in Article 894.1 of the Code of Criminal Procedure. A jury has found Mr. Miller guilty of aggravated rape and aggravated incest of a child. I think it’s one of the most horrible crimes that can happen. There’s crimes of greed, avarice, anger for money, all kinds of things, but when anything is done to a child (sic) adults are supposed to protect children. This was a very young child, six to eight years old, when it started. I don’t remember the exact dates because there was a fluctuating date, but I think he was six to eight, and eight maybe when it finally ended. And it’s just abhorrent. And I believe that considering the crime itself and your past record, which came out |17during the trial, your number of convictions, any other sentence which I’m going to give would deprecate the seriousness of the crime. And I just hope that the child can overcome, and I know he’s had a really, really rough time in his life, and this has really been traumatic for that young man. I hope he can overcome it and live a life with some peace and dignity.
The trial judge sentenced defendant to 20 years imprisonment at hard labor on the aggravated incest of a child conviction and life imprisonment without benefit of parole, probation or suspension of sentence on the aggravated rape conviction. The trial judge ordered that the sentences run consecutively. Defense counsel orally made a motion to reconsider the sentence, “especially the consecutive nature of the life and twenty-year sentence.” The trial court denied the motion.
LSA-R.S. 14:42(D) sets forth the punishment for aggravated rape. LSA-R.S. 14:42(D)(2)(b) provides in pertinent part, “if the victim was under the age of thirteen years, ...., and if the district attorney does not seek a capital verdict, the offender shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.”
LSA-R.S 14:78.1(D) provides the punishment for aggravated incest.
At the time the abuse first occurred, LSA-R.S 14:78.1(D) stated: “A person convicted of aggravated incest shall be fined an amount not to exceed fifty thousand dollars, or imprisoned, with or without hard labor, for a term not less than five years nor more than twenty years, or both.”
In the present case, defendant argues the trial judge erred by ordering his sentences to run consecutively, and he properly raised this claim at the sentencing hearing. The aggravated incest and aggravated rape convictions did constitute parts of a common scheme or plan; therefore, under LSA-C.Cr.P. art. 883, the sentences “shall be served concurrently unless the court expressly directs that some or all be served consecutively.”
|18In Williams, supra, this Court stated that LSA-C.Cr.P. art. 883 does not specifically require the trial court state reasons justifying the imposition of a consecutive sentence when the crimes arise out of a single course of conduct. Rather, the history of the jurisprudence reveals that the requirement for articulating specific reasons for imposing a consecutive sentence is based on LSA-C.Cr.P. art. 894.1, which requires a sentencing court to *622 “state for the record the considerations taken into account and the factual basis therefore in imposing sentence.” Over time, the Louisiana Supreme Court has found that the failure to articulate reasons for sentencing pursuant to Article 894.1 does not require a remand when the sentence imposed is not “apparently severe” and there is an adequate factual basis for the sentence contained in the record. Therefore, the failure to articulate specific reasons for imposing a consecutive sentence also does not require a remand if the record provides an adequate factual basis to support a consecutive sentence. Bradley, 02-1130, 844 So.2d at 118.
In the present case, the trial court did not articulate specific reasons for its imposition of consecutive sentences. However, based on this Court’s decision in Williams, a remand is not required if the record provides an adequate factual basis to support a consecutive sentence.
In State v. Puckett, 02-997 (La.App. 5 Cir. 1/28/03), 839 So.2d 226, writ denied, 03-891 (La.12/12/03), 860 So.2d 1148, this Court found that the trial court did not err in ordering defendant’s aggravated oral sexual battery conviction to run consecutively with his aggravated rape conviction. In Puckett, defendant did not challenge the mandatory life sentence for aggravated rape, but argued the consecutive nature of his sentences were excessive because both offenses arose out of the same criminal episode and the trial court failed to state factors justifying the consecutive sentences. Puckett, 02-997, 839 So.2d at 233. This Court found that |19the record supported the consecutive nature of the sentences, stating (1) the record showed defendant had a significant criminal history involving three felony convictions, (2) defendant harassed the victim prior to the incident, (3) the actual incident was cruel and humiliating; and (4) defendant attacked a victim with a compromised mental capacity. Puckett, 02-997, 839 So.2d at 234.
Additionally, in State v. Morgan, 09-694, p. 9 (La.App. 5 Cir. 2/23/10), 34 So.3d 909, 915, this Court held that the trial court did not err in imposing consecutive sentences. This Court found that the record supported consecutive sentences even though the offenses appeared to have been part of defendant’s common scheme or plan to rape his daughter. This Court noted that the trial judge gave his reasons for imposing consecutive sentences, stating that he viewed the rape of a child as “practically the most heinous thing” he had ever seen and the “wors[t] thing that could happen to an individual.” This Court also noted that the trial judge was concerned with the trauma the child suffered as a result of defendant, her biological father, raping her over a period of years. Id.
In the present case, the trial judge stated that the crime was abhorrent, noting the young age of the child and that the abuse had occurred over a period of time, when the child was between the ages of six and eight. The trial judge also indicated that he considered defendant’s past record, in which he had a number of convictions. Additionally, as in Morgan, the trial judge in the present case was concerned with the trauma the child suffered from the abuse.
Based on the foregoing, we find that the record contains an adequate factual basis for the consecutive nature of the sentences.
Accordingly, for the reasons assigned herein, the convictions and sentences of defendant Michael Miller are hereby affirmed.

AFFIRMED

. The initials of the victim and those of certain family members are used under the authority of LSA-R.S. 46:1844(W)(3), which allows the court to protect the identity of a crime victim who is a minor or a victim of a sex offense. State v. Greene, 06-667, p. 3 (La.App. 5 Cir. 1/30/07), 951 So.2d 1226, 1229, writ denied, 07-0546 (La. 10/26/07), 966 So.2d 571.

. At trial, J.B. was 14 years old.

. The address of the second apartment was 236 Central Avenue.

. In Simmons, this Court recognized that memory lapse and alleged inconsistencies may have resulted from the child-victim’s tender age of five years on the date of the incident, the traumatic nature of the experience, exposure to unfamiliar surroundings, or the method of interrogation. In Simmons, this Court noted that despite some minor inconsistencies in the details surrounding the attack, the victim never wavered in her statement to the police, to her mother, and in her CAC interview, that the defendant put his "thing” in her mouth and "down there.” Simmons, 03-20 at 13-14, 845 So.2d at 1258.