ROBERT M. MURPHY, Judge.
| gDefendant/appellant, Charles Allen, appeals his conviction and sentence for attempted illegal carrying of a weapon. For the reasons that follow, defendant’s conviction and sentence are affirmed.

STATEMENT OF THE CASE

On August 7, 2012, the Jefferson Parish District Attorney’s Office filed a bill of information charging defendant in count one with being in possession of a firearm[1] while also being in possession of Marijuana, a violation of La. R.S. 14:95(E), and in count two with being in possession of a stolen firearm in violation of La. R.S. 14:69.1.[2] On August 16, 2012, defendant pled not guilty to both counts. The matter proceeded to trial before a twelve-person jury on January 16, 2013, and, at the conclusion of trial on January 17, 2013, defendant was unanimously found guilty of the responsive verdict of attempted illegal carrying of a weapon, a | ¡¿violation of La. R.S. 14:27:95(E). On January 24, 2013, the trial court sentenced defendant to five years at hard labor without the benefit of parole, probation, or suspension of sentence, with credit for time served. Defense counsel orally objected to the sentence. On January 29, 2013, defendant moved for reconsideration of sentence, and the motion was denied. Defendant was granted an out-of-time appeal on September 16, 2014.

FACTS

At trial, Detective Randy Piearella testified that he worked in the narcotics section of the Jefferson Parish Sheriffs Office in June and July of 2012. On July 2, 2012, Detective Piearella executed a search warrant at 3001 8th Street, Apartment A, located within Jefferson Parish. Present with him at that time were Lieutenant Danny Jewell, Detective Bermudez, Detective Roniger and FBI Agent Ronnie Voor-hies. When the team of law enforcement officers received no response after knock-, ing and announcing their presence, they entered the apartment by ramming down the door. Inside of the apartment, Detective Picarella’s Lieutenant observed defendant on the stairs, at which time defendant was placed into handcuffs, brought to the bottom of the stairwell, and read his Miranda[3] rights. During a security sweep of the premises, a small child was located in an upstairs bedroom and brought downstairs as well.
Detective Piearella stated that a search of the two-bedroom apartment commenced while defendant was being questioned downstairs. When asked if there were weapons or marijuana in the apartment, defendant advised that there was marijuana, and he agreed to show officers where it was. At that time defendant led Detec *776 tives Picarella and Roniger upstairs, and defendant pointed to a box by the bed on a windowsill that contained marijuana. Inside of the box were large Rplastic bags with smaller individual bags contained inside.[4] After the marijuana was located, defendant indicated that there were no guns and no more marijuana in the apartment, but defendant did say that there was “some money under the bed in a box.”[5] Along with money found under the bed, a digital scale was also located in a shoe box.
While Detective Picarella was downstairs in the apartment, he was advised by Detective Roniger that several firearms had been recovered. When questioned, defendant admitted that there were four guns upstairs. As part of his testimony, Detective Picarella identified photographs of an upstairs master bedroom closet with the guns[6] inside. Also found upstairs during the search was a duffle bag with numerous amounts of different types of ammunition, including a “long drum” magazine which contained approximately 70 rounds. A second bag of marijuana was located on a vanity between two closets. A recorded statement was taken from defendant after a “Rights of Arrestee Form”[7] was reviewed with him. During his statement, defendant was asked about another gun that was found in the living room inside of a box that resembled a book. Detective Picarella indicated that the serial number on that gun connected to a burglary committed in 2009. Each gun, as well as assorted clips and ammunition, seized during the search of defendant’s apartment was identified by Detective Picarella in photographs introduced into evidence by the State. Detective Pi-carella further identified one photograph of the 12 bags of marijuana that defendant led police to, and a second photograph of the bag of marijuana found on a vanity next to the closet. Pictures of a digital scale, a Rcell phone and defendant’s driver’s license were also identified by Detective Picarella and entered into evidence as well. Detective Picarella testified that three items were found during the search that connected defendant to the 3001 8th St. address: a driver’s license, a letter addressed to defendant and an Entergy bill. A consensual search of a vehicle located outside of the apartment yielded no contraband.
On cross examination, Detective Picarel-la confirmed that on Page 2 of defendant’s confession, defendant stated that everything in the home or on the property belonged to him. Detective Picarella did not recall telling defendant that Jamika Johnson could go to jail and that her child would be placed in State’s custody if defendant did not cooperate and give a statement. With the exception of the handgun, Detective Picarella described the firearms found in the apartment as “dirty and rusty.”
*777 On re-direct examination, Detective Pi-carella testified that, during questioning, defendant specifically identified which upstairs closet was his. The guns were located in the closet that defendant identified as his.
Detective Brad Roniger testified that on July 2, 2012, he was working in the narcotics section of the Jefferson Parish Sheriffs Office. On that date, he participated in the execution of a search warrant at 3001 8th Street. After the officers entered the apartment, Detective Roniger escorted defendant and Detective Picarella upstairs to retrieve a quantity of marijuana that defendant indicated was there.[8] Defendant also told Detective Roniger that he had large sums of money in a shoebox under the bed. Detective Picarella remained with defendant in the downstairs of the apartment while the master bedroom was searched. During that search, Detective Roniger was informed that firearms had been located in 1(¡defendant's bedroom closet and he personally went to observe them.[9] Defendant did not inform police that there was another pistol hidden inside of a “fake book.” Detective Roniger testified that $890.00 in U.S. currency was located under the bed along with a digital scale. He did not locate any more contraband during the course of the investigation that day.
Lieutenant Daniel Jewell testified that he worked for the Jefferson Parish Sheriffs Office narcotics section, and supervised a group of officers who executed a search warrant on July 2, 2012, in the 3000 block of 8th Street. Lieutenant Jewell covered and breached the rear door of the apartment. After entering, Lieutenant Jewell saw someone standing on the upper level of a staircase and ordered the individual, later identified as defendant, to come downstairs. He then detained defendant[10] and placed him into handcuffs. During a search of defendant’s apartment, Lieutenant Jewell recovered a small bag of marijuana located on a vanity between two closets in the master bedroom. He also recovered a Sig Sauer .45 pistol “inside of a wooden box that is made to look like a book.” The pistol had a magazine with bullets in it. Lieutenant Jewell participated in the questioning of defendant on audio tape. On cross-examination, Lieutenant Jewell recalled that defendant denied ever •firing any of the weapons that were found in his apartment.
Jamika Johnson testified for defendant, who she identified as her live-in boyfriend. Her seven-year-old son resided with them as well. On July 1, 2012, Johnson’s address was 3001 8th Street. On that date, she learned that police were searching her home and had defendant in handcuffs, so. she went there directly from work. After she arrived, she was questioned by police upstairs in her apartment. Johnson stated that one officer was “yelling” to “put the handcuffs on |7her.” Johnson also testified that police told defendant that if he did not make a confession that they would put her in jail and take her son away.
Johnson stated that there was marijuana in the apartment, both in her makeup vanity and on the windowsill. She said that the marijuana found was hers and that she smoked it occasionally. Johnson had never' seen defendant load or shoot a gun. She had knowledge that ■ defendant had *778 previously been shot, but she was not present when that happened. Johnson did not know the purpose for defendant having guns in the apartment.
On cross examination, Johnson testified that the guns in the apartment belonged to defendant, but that she had never seen the guns before the day that police seized them. Johnson acknowledged that the bag with marijuana was on the left side of the bed, where defendant slept. She claimed that the money found under the bed was hers, but that, she was not aware of the scale. Johnson did not tell police on the date of defendant’s arrest that the marijuana was hers because she did not want her son to go to social services if both she and defendant were arrested.
On re-direct examination, Johnson said that she felt comfortable with defendant watching her son. She stated that the money found under the bed was hers, and that she had obtained it through tax refunds owed to her. She was planning to buy a car and go to an outlet store in Mississippi to spend the money.
Defendant testified that he lived at 3001 8th Street with Jamika Johnson and her son. He stated that on the date of his arrest he heard the sound of police breaching the back door of his apartment. Defendant walked to the stairs and was met by an armed officer who told him to come down to the first floor. After defendant complied, he was handcuffed and placed at his kitchen table. Defendant denied telling officers where there was marijuana in his apartment. He testified that the marijuana was brought downstairs to him by police. Defendant did not reply to | ^officers when they asked if he had guns in the home, but the officers informed defendant that they had found guns in the apartment. Defendant admitted that the guns were his, and he claimed to have purchased them after being shot six times. The man who shot him was never prosecuted because defendant did not want to testify against him at trial, and New Orleans did not have a witness protection program in place. Defendant denied ever loading or shooting any of the guns found in the apartment. Defendant testified that the marijuana found in the apartment belonged to Jamika Johnson. He also admitted that he had a prior conviction for misdemeanor possession of marijuana.
On cross-examination, defendant denied that he had pled guilty to a second marijuana charge in 2004. He testified that he was pressured into giving a statement to police, based upon threats that his girlfriend would be arrested and her child would be taken away. Defendant admitted telling police the marijuana was his, but testified that he was pressured into, saying that. He said that the marijuana was divided into smaller bags because it was purchased that way by Johnson. The scale belonged to defendant, and he used it to weigh marijuana that he purchased for himself. He denied ever using the scale to “break up” marijuana into packages. Defendant stated that he purchased all of the guns at one time from Dirone Hicks in 2008. He claimed that he did not know how to shoot any of the guns. Defendant testified that he lied when he told police that he forgot to disclose certain details because his brain was “fried” from smoking marijuana and that he barely knew how to read. Defendant did not think that Johnson’s son could have found the guns in his closet because he was not allowed in the master bedroom.

ASSIGNMENT OF ERROR NUMBER ONE

The State failed to prove defendant exercised dominion or control over any of the substances that he was accused of possessing, producing, or manufacturing, and failed to prove the nexus between his con *779 structive possession of the guns and |9his alleged possession of marijuana. The State failed to prove that he was guilty beyond a reasonable doubt of attempted possession of guns while in possession of marijuana.

DISCUSSION

In this assignment, defendant asserts that the evidence was insufficient to support a guilty verdict. In support of his argument, defendant points to the testimony of Jamika Johnson that the marijuana found in the apartment was hers, as well as his recanted confession to police, and concludes that the State therefore failed to establish his knowing or intentional possession of the marijuana. Defendant further argues that “mere association with the apartment [where the marijuana was found] is insufficient to constitute constructive possession.” Defendant also contends that the State did not prove he intended to possess both the guns and the marijuana “for a reason that was related.”
Conversely, the State argues that the statement defendant gave to officers, the testimony of witnesses at trial and corroborating evidence all provided sufficient evidence to support defendant’s conviction for the charged offense. The State correctly argues, citing this Court’s opinion in State v. Storks, 02-754 (La.App. 5 Cir. 12/30/02), 836 So.2d 638, 641, that when a defendant fails to object to a legislatively responsive verdict, the conviction will not be reversed as long as the evidence is sufficient to support the offense charged.
The standard of review for determining the sufficiency of the evidence is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Both direct and circumstantial evidence must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Harrell, 01-841 (La.App. 5 Cir. 2/26/02), 811 So.2d 1015, 1019.
| , (¡Circumstantial evidence is evidence of facts or circumstances from which one might infer or conclude, according to reason and common experience, the existence of other connected facts. State v. Kempton, 01-572 (La.App. 5 Cir. 12/12/01), 806 So.2d 718, 722. The rule as to circumstantial evidence is “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” La. R.S. 15:438. The reviewing court is not required to determine whether another possible hypothesis of innocence suggested by the defendant offers an exculpatory explanation of events. Rather, the reviewing court must determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. State v. Mitchell, 99-3342 (La.10/17/00), 772 So.2d 78, 83.
Under the Jackson standard, a review of a criminal conviction record for sufficiency of evidence does not require the court to ask whether it believes that the evidence at trial established guilt beyond a reasonable doubt, but rather whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt after viewing the evidence' in the light most favorable to the prosecution. State v. Flores, 10-651 (La.App. 5 Cir. 5/24/11), 66 So.3d 1118, 1122. When addressing the sufficiency of the evidence, consideration must be given to the entirety of the evidence, both admissible and inadmissible, to determine whether the evidence is sufficient to support the convic *780 tion. State v. Hearold, 603 So.2d 731, 734 (La.1992).
In the instant case, defendant was charged with violating La. R.S. 14:95(E), which provides, in pertinent part, for the offense of possessing, or having under one’s immediate control, any firearm, or other instrumentality customarily used or intended for probable use as a dangerous weapon, while in the possession of or | n during the sale or distribution of a controlled dangerous substance. In State v. Blanchard, 99-3439 (La.01/18/01), 776 So.2d 1165, 1174, the Louisiana Supreme Court reviewed the State’s burden of proof regarding the elements of La. R.S. 14:95(E):
In order to prove a violation of La. R.S. 14:95(E) when a defendant is found to be in constructive possession of a firearm while simultaneously in possession of a controlled dangerous substance, the state must prove that there is a nexus between the firearm and the controlled dangerous substance. Proof of this nexus is not required where the defendant uses or has actual possession of the firearm, or has the firearm within his immediate control. In order to prove that nexus, the state must show some connection between the possession of the firearm and the drug offense.
In State v. Jordan, 06-187 (La.App. 5 Cir. 9/26/06), 938 So.2d 805, 808, rehearing denied, 06-187 (La.App. 5 Cir. 10/16/2006), this Court noted, “As evidenced by Blanchard, the nexus requirement of LSA-R.S. 14:95(E) is fact sensitive.”
Although defendant, in his assignment of error contends that he only had “constructive possession of the guns,” the record shows, in fact, that he never denied that the guns seized pursuant to the search warrant were his. Rather defendant claims that the State failed to prove beyond a reasonable doubt that he had constructive possession, dominion and control over the marijuana found in the apartment and that he “knowingly possessed it.” Accordingly, defendant concludes that there was no nexus established between the guns and the marijuana.
Possession of a controlled dangerous substance can be established by actual, constructive, or joint possession, and the determination of whether sufficient possession exists to convict is dependent upon the facts of each case. State v. Major, 03-3522, p. 7 (La.12/1/04), 888 So.2d 798, 802. Actual possession occurs when a person physically possesses the item in question. In order to prove constructive possession of the controlled dangerous substance, evidence must show 11?,control or dominion over, as well as guilty knowledge of the contraband. Joint possession may be proven if a person willfully and knowingly shares with another the right to control the contraband. State v. Trahan, 425 So.2d 1222, 1226 (La.1983); State v. Smith, 257 La. 1109, 245 So.2d 327, 329 (1971). Factors that may establish control or dominion necessary for constructive or joint possession include knowledge that the drugs were in the area, relationship with the person found to have possession, access to the area where the drugs were found, evidence of recent drug use, and physical proximity to the contraband. State v. Toups, 01-1875, p. 4 (La.10/15/02), 833 So.2d 910, 913, State v. Lewis, 04-1074, p. 8 (La.App. 5 Cir. 10/6/05), 916 So.2d 294, 299, writ denied, 05-2382 (La.3/31/06), 925 So.2d 1257.
Defendant does not contest the fact that marijuana was found in the apartment on the date the search warrant was executed. The jury was presented with evidence that the “green vegetable matter” found in defendant’s home was marijuana. Detective Randy Picarella, Detective Wil *781 liam B. Roniger, and Lieutenant Daniel J. Jewell, Jr. all testified that defendant did not have any controlled dangerous substances on his person when they took him into custody, and, therefore, actual possession was not established by the State.
In State v. Bazley, 09-358 (La.App. 5 Cir. 01/11/11), 60 So.3d 7, 20, writ denied, 11-282 (La.6/17/11), 63 So.3d 1039, this Court discussed the types of evidence that could be used to support the element of constructive possession of illegal drugs:
The mere presence of the defendant in the area where a controlled dangerous substance is found does not constitute constructive possession. State v. Jones, 04-1258, p. 7 (La.App. 5 Cir. 4/26/05), 902 So.2d 426, 431. However, proximity to the drug may establish a prima facie case of possession when colored by other evidence. Id. Factors to be considered in determining whether a defendant exercised dominion and control sufficient to constitute constructive possession include: (1) the defendant’s knowledge that illegal drugs were in the area; (2) his relations with the person found to be in actual possession; (3) the defendant’s access to the area where the |isdrugs were found; (4) evidence of recent drug use by the defendant; (5) the existence of paraphernalia; and (6) evidence that the area was frequented by-drug users.
In the instant case, it was not contested that defendant was living at the apartment at the time the search warrant was executed. The jury was presented with evidence of the confession defendant gave to police on the day of his arrest, during which he professed ownership of the guns and all of the drugs found in the apartment. Detectives Picarella and Roniger both testified that defendant led them upstairs, and identified a box by the bed on a windowsill that contained marijuana. Defendant admitted during his testimony that he shared the bedroom where the marijuana was found with Jamika Johnson. The testimony of Jamika Johnson established that the box with the marijuana was found on defendant’s side of the bed where they both slept. Defendant also testified that the scale found under the bed was his and that he used it to weigh marijuana that he purchased for himself.
With regard to defendant’s argument that there was no nexus established between the marijuana and the guns found, we find that the record contains sufficient evidence from which the jury could have determined otherwise. The scale, as well as the smaller bags of marijuana which appeared to be packaged for sale, are both factors used by the courts in determining whether circumstantial evidence is sufficient to prove the intent to distribute.[11] In addition, large sums of cash, as was found under defendant’s bed, may also be considered as circumstantial evidence of intent to distribute a controlled substance. State ex rel. B.L., 02-923, p. 4 (La.App. 5 Cir. 1/28/03), 839 So.2d 246, 248, citing Hearold, 14supra, 603 So.2d at 736. Furthermore, guns and drugs frequently go hand-in-hand.[12]
Although defendant recanted his confession and Jamika Johnson testified at trial that the drugs found in the bedroom were hers, the jury apparently *782 found this testimony not to be credible. The credibility of witnesses presenting conflicting testimony on factual matters is within the sound discretion of the trier of fact. State v. Jones, 08-20 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 240. The trier of fact shall evaluate the witnesses’credibility, and when faced with a conflict in testimony, is free to accept or reject, in whole or in part, the testimony of any witness. Id. It is not the function of the appellate court to second guess the credibility of witnesses as determined by the trier of fact or to reweigh the evidence absent impingement on the fundamental due process of law. Id. Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of credibility of the witnesses, this is a matter of the weight of the evidence, not its sufficiency. State v. White, 472 So.2d 130, 132 (La.App. 5 Cir.1985); State v. Miller, 11-498 (La.App. 5 Cir. 12/13/11), 84 So.3d 611, 617, writ denied, 12-176 (La.9/14/12), 97 So.3d 1012. The credibility of witnesses will not be reweighed on appeal. Id. “[T]he Jackson standard does not serve as a vehicle for a reviewing court to second guess the rational credibility determinations of the fact finder at trial.” Id.
Defendant further argues that, as per La. R.S. 14:18, he was justified in having weapons in his possession even where drugs were present because of his extreme fear due to having been shot six times in the past and the responsible party | ifjStill being at large. The jury was not instructed about the defense of justification at trial, nor does the record indicate that defendant requested such a charge be given.
In reviewing a conviction in which the defendant offered testimony that his criminal actions were justified, a reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Cheatwood, 458 So.2d 907 (La.1984). In this case, other than the testimony of defendant himself, there was no corroborating evidence regarding the circumstances during which defendant claims he was shot. It appears that the jury did not find defendant’s testimony to be credible on this issue. As noted above, the credibility of witnesses will not be reweighed on appeal. Miller, supra. We find this argument to be without merit.
Based on the foregoing, we find that the evidence was sufficient to support the jury’s conclusion that defendant had constructive possession of the marijuana, which, along with his admitted possession of the guns, met all elements of La. R.S. 14:95(E), the offense that defendant was charged with.[13]

ASSIGNMENT OF ERROR NUMBER TWO

The district court erred in imposing an unconstitutionally excessive, maximum sentence on the first felony offender defendant.

DISCUSSION

In his second assignment, defendant argues that his sentence is excessive because he received the maximum sentence even though he was only a first time felony offender, and that the trial court did not adequately consider all extenuating circumstances as set forth in La. C.Cr.P. art. 894.1.
After the court sentenced defendant to five years at hard labor, defense counsel orally objected. The record also reflects that after sentencing, defendant 116filed a written motion to reconsider sen- *783 tenee based on the alleged excessiveness of his sentence. However, defendant did not raise the issue of the trial judge’s failure to consider pertinent mitigating factors under La. C.Cr.P. art. 894.1 at the trial court level. As such, to the extent that defendant argues that the judge failed to articulate his reasons for sentencing pursuant to La. C.Cr.P. art. 894.1, defendant is precluded from raising such an issue on appeal. State v. Declouet, 09-1046 (La.App. 5 Cir. 10/12/10), 52 So.3d 89, 105, writ denied, 10-2556 (La.4/8/11), 61 So.3d 681; State v. Ridgley, 08-675 (La.App. 5 Cir. 1/13/09), 7 So.3d 689, writ denied, 09-0374 (La.11/6/09), 21 So.3d 301. The failure to state specific grounds upon which a motion to reconsider sentence is based limits a defendant to a review of his sentence for constitutional excessiveness only. State v. Warmack, 07-311 (La.App. 5 Cir. 11/27/07), 973 So.2d 104, 108.
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive if. it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Lobato, 603 So.2d 739 (La.1992), State v. Munoz, 575 So.2d 848 (La.App. 5th Cir.1991), writ denied, 577 So.2d 1009 (La.1991). Once imposed, a sentence will not be set aside absent manifest abuse of the trial court’s wide discretion to sentence within statutory limits. State v. Carter, 96-358 (La.App. 5th Cir.11/26/96), 685 So.2d 346.
La. R.S. 14:95(E), provides, in relevant part:
If the offender uses, possesses, or has under his immediate control any firearm, or other instrumentality customarily used or intended for probable use as a dangerous weapon, while committing or attempting to commit a crime of violence or while in the possession of or during the sale or distribution of a controlled dangerous substance, the offender shall be fined not more than ten thousand dollars and imprisoned at hard labor for not less than five nor more |17than ten years without the benefit of probation, parole, or suspension of sentence.
La. R.S. 14:27(D)(3) states:
D. Whoever attempts to commit any crime shall be punished as follows:
(3) In all other cases he shall be fined or imprisoned or both, in the same manner as for the offense attempted; such fine or imprisonment shall not exceed one-half of the largest fine, or one-half of the longest term of imprisonment prescribed for the offense so attempted, or both.
In sentencing defendant in the instant case, the trial court observed:
THE COURT:
All right. Mr. Allen, a jury found you guilty of an attempt [sic] illegal carrying of a weapon. And I want the Record to reflect that I listened carefully to the testimony that was given throughout the trial of all witnesses. And it was my impression, and I do find from the testimony, that there were multiple weapons in a very small apartment. I want the Record to reflect that some were — one was an AK-47, one was a shotgun that had a pistol grip; the amount of ammunition was excessive to say the least.
I’ve taken into consideration the sentencing guidelines of 894.1, and all the testimony in the trial. And I sentence you to five years at hard labor in the custody of the Department of Corrections, giving you credit for time served.
In State v. Taylor, 98-603 (La.App. 5 Cir. 03/10/99), 733 So.2d 77, this court considered the issue of whether a *784 10-year sentence without the benefit of parole, probation, or suspension of sentence, was constitutionally excessive for a first time offender convicted of illegal carrying of a weapon while in possession of a controlled dangerous substance, in violation of La. R.S. 14:95(E). In that case, the defendant was found to be in possession of cocaine, and he had various firearms in his bedroom which were loaded and accessible to children in the house. 11RWe did not consider the sentence to be excessive given the facts of the case.[14] In the instant ease, as in Taylor, defendant possessed a cache of weapons and ammunition that the record shows were easily accessible to a minor child who was also living in the apartment with him. Defendant was sentenced within the statutory range,[15] after the trial court considered the record and the factors detailed in La. C.Cr.P. art. 894.1.
Accordingly, we cannot say under the facts of this case that defendant’s sentence was constitutionally excessive.

ERRORS PATENT DISCUSSION

The record was reviewed for errors patent, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). The following error is noted:
The trial court failed to impose the mandatory fine required by the attempt statute as it relates to La. R.S. 14:95(E), which provides for “a fine of not more than ten thousand dollars.” Thus, defendant’s sentence is illegally lenient. This Court has the authority to amend an illegally lenient sentence. La. C.Cr.P. art. 882. However, such authority is permissive rather than mandatory. State v. Pitt, 09-1054 (La.App. 5 Cir. 4/27/10), 40 So.3d 219, 224, writ denied, 10-1141 (La.12/10/10), 51 So.3d 725. While this Court has held that statutes providing for a fine of “not more than” a specified amount do require a mandatory fine, this Court has also recognized that the matter is not free from doubt. State v. Kerlec, 06-838 (La.App. 5 Cir. 4/11/07), 957 So.2d 810, 815, writ denied, 07-1119 (La.12/7/07), 969 So.2d 19626. See also State v. Francois, 06-0788 (La.App. 3 Cir. 12/13/06), 945 So.2d 865 (holding that when a trial court does not impose a fine in a situation where the statute authorizes a fine of “not more than” a certain amount, the court impliedly imposes a $0 fine and there is no error requiring remand.) Further, this Court has, as a matter of discretion, refrained from amending an illegally lenient sentence to impose a fine in a criminal matter involving an indigent defendant. See Pitt, supra.
In the instant case, because defendant is presumably indigent because of his representation by the Louisiana Appellate Project and the State has not raised this issue on appeal, we decline to correct the sen *785 tence or remand for the imposition of a fíne.

CONCLUSION

For the foregoing reasons, defendant’s sentence and conviction are affirmed.

CONVICTION AND SENTENCE AFFIRMED

. The bill of information alleged that defendant was in possession of a Remington rifle, an AK47 assault rifle, a Mossberg 12 gauge shotgun, and a Cobray 9 mm handgun.

. The record indicates that the second count was nolle prossed at trial.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. Marcelle Folse testified that he was employed by the Jefferson Parish Sheriff’s Office Crime Laboratory as a Forensic Chemistry Supervisor and drug analyst. She identified State’s Exhibit 2 as two specimens she had tested in this case, both of which were clear sandwich bags containing "vegetative” material. Folse's Scientific Analysis Report, which followed testing, concluded that marijuana was contained in both specimens.

. Detective Picarella testified that the total amount of the money found was $890.00.

. Detective Picarella identified the guns as a "hunting rifle”, a “shotgun”, an "AK-47 style rifle”, and a "MAC-11.”

. The rights of arrestee form and a transcript of defendant's recorded statement were introduced into evidence. Detective Picarella testified that, prior to trial, he noted a discrepancy in his report regarding the date defendant was arrested. The correct date was July 2nd.

. Detective Roniger identified defendant in court.

. Detective Roniger identified photographs of defendant’s bedroom closet and the guns found therein.

.Lieutenant Jewell identified defendant in court.

. State v. Hearold, 603 So.2d 731 (La.1992), and State v. Taylor, 99-1154 (La.App. 5 Cir. 2/29/00), 757 So.2d 63, writ denied, 00-1021 (La.3/30/01), 788 So.2d 441.

. State v. Warren, 05-2248, p. 18 (La.2/22/07), 949 So.2d 1215, 1229. See also, United States v. Trullo, 809 F.2d 108, 113 (1st Cir. 1987), cert. denied, 482 U.S. 916, 107 S.Ct. 3191, 96 L.Ed.2d 679(1987), ("[T]o ••• dealers in narcotics, firearms are as 'much ‘tools of the trade’ as are most commonly recognized articles of drug paraphernalia.”).

. State v. Storks, supra.

. See also, State v. Hubbard, 12-202 (La.App. 5 Cir. 10/30/12), 103 So.3d 594, where this court upheld a ten-year sentence for a violation of La. R.S. 14:95(E), when the defendant was in possession of a firearm while also in possession of cocaine. In State v. Kennerson, 05-410 (La.App. 3 Cir. 11/02/05), 916 So.2d 1236, the Third Circuit upheld a five-year sentence for a defendant who pled guilty to possession of marijuana while in possession of a firearm.

. With respect to defendant’s assertion that the restriction of benefits on his sentence makes it excessive, we again note that defendant did not argue this issue in the trial court below. Even considering his argument, however, we find it to be without merit. La. R.S. 14:95(E) provides for a mandatory restriction of benefits. Because La. R.S. 14:27(D)(3) dictates that the sentence for someone convicted of an attempted crime be “in the same manner as for the offense attempted,” we find no error in the trial court's restriction of benefits.