DREW, J.
| ,Tarsa Cooley was convicted of second degree murder and sentenced to life imprisonment without benefits. He appeals. We affirm in all respects.
FACTS
On June 13, 2008, Matthew Robert was murdered while working as a clerk at Max’s Pawn Shop on Linwood Avenue in Shreveport. His coworker, Tory Jackson, observed the entry of a man with braided hair and wearing a white T-shirt and sunglasses. The person ordered Robert, “Give me all the money,” and then said, “You think I’m playing?” Using a chrome-plated revolver, the robber shot Robert in the chest, while Jackson was only an arm’s length away.
From his hiding place, Jackson saw Robert fall to the floor, gasping for breath. The robber fled, firing back into the store.
Video surveillance cameras fully captured the event, showing that:
• a silver-colored Cadillac pulled into the parking lot and stopped;
• an individual in a white T-shirt exited the vehicle from the driver’s door;
• the person entered the store, walked up to the counter, pulled out a gun from under his shirt, and shot the man behind the counter; and
• the killer fired into the store as he fled, then sped away in the Cadillac.
Robert later died from the gunshot, which had damaged several organs. Firearms identification indicated that the deformed jacket taken from Robert’s body was discharged from a .44-caliber gun.
Earlier that day, two other robberies had occurred in this same vicinity.
12Vanessa Reeve, working as a clerk for a Family Dollar store, was robbed by a person who demanded cash, put a gun to her head, and threatened to “blow [her] head off.” This robber also fired back into the store as he fled. At trial, Ms. Reeve identified Cooley as the robber who assaulted her.
After the Family Dollar store robbery, but before the killing at the pawn shop, Cecil Irvine was robbed at gunpoint at a Shreveport Texaco station. The robber took Irvine’s silver-colored 2006 Cadillac, threatening that they “could do it the easy way, or the hard way.” When the car was found, it bore fingerprints that were later matched to the defendant. At trial, Irvine identified Cooley as the armed robber who stole his vehicle.
Defendant became a suspect in the murder of Robert the next day when officers received an anonymous tip through Crime Stoppers. The tip alleged that the defendant had braided hair on the date of the killing. When officers matched the latent prints from the Cadillac to those of Tarsa Cooley, they prepared photographic lineups containing a picture of him and showed them to Tory Jackson, who identified the defendant as the shooter.
Cooley was apprehended in Shreveport pursuant to an arrest warrant. Using a police canine, officers found him huddling in a closet with a .44-caliber Rossi revolv *1097 er. Subsequent testing by the North Louisiana Crime Lab indicated that the bullet found inside Robert’s body at autopsy had been fired by the revolver found in the closet with the defendant.
Officers also developed Tiray Edwards, defendant’s 15-year-old cousin, as a suspect. Although Edwards’ trial testimony was lacking in |,.¡details, he affirmed the post-Miranda, statement he made to officers in which he detailed that he had been with the defendant at all three locations on June 13, 2008. Edwards told officers that:
• they had first gone to the Family Dollar in his cousin’s car;
• Cooley entered the business while Edwards remained with the vehicle;
• Cooley took a purse containing four dollars from a customer;
• they went in search of another target and settled on the Texaco station;
• the clerk locked the doors of the business before they were able to gain entry;
• Cooley approached Mr. Irvine and stole his vehicle;
• the two men went in the stolen vehicle to the pawn shop;
• Cooley went inside armed with a chrome .44-caliber revolver;
• Edwards stayed in the car and soon heard gunshots;
• he saw Cooley run out toward the vehicle;
• Cooley told him to start shooting, which he did, as they sped away; and
• Cooley admitted to him that he had shot the man inside the store.[1]
The defendant was initially indicted for first degree murder, but the indictment was subsequently amended to reduce the charge to second degree murder.
Prior to trial, the state gave notice under La. C.E. art. 404(B) of its intent to use other crimes evidence in the guilt and penalty phase of the | ^defendant’s trial. A Prieur[2] hearing was conducted, during which the state reiterated its intent to introduce evidence that the defendant had participated in the other two robberies.
The state argued that the first incident showed proof of intent, plan and preparation. As to the second incident, the state contended that the evidence was admissible as res gestae in that the just-stolen Cadillac was used in the pawn shop crime, and therefore constituted an integral part of the murder of Matthew Robert.
Regarding the robbery at the Family Dollar, the court stated the following:
As to the circumstances or the evidence surrounding the Family Dollar incident, the Court has some reservations as to the connection, but if defense counsel has the benefit of the recorded statements of the co-defendants as well as Mr. Cooley, then I am assuming that the State can make the proper 404(B) argument as to plan and intent for purposes of admissibility.
So the Court will rule as follows as to the defense counsel’s motion: ... As to the Family Dollar incident, the Court is satisfied for the purposes of today’s hearing that the State has the witnesses and additional evidence to show the 404(B) circumstances of intent and motive for purposes of admission.
The court also found the evidence of the Texaco robbery to constitute admissible res gestae evidence.
At trial, the state presented evidence identifying the defendant as the perpetrator of the two earlier armed robberies at *1098 the Family Dollar and Texaco station. No objection to the admissibility of this evidence was re-urged at trial.
| sThe defendant was unanimously found guilty of second degree murder.
Defendant’s post-verdict motion for modification of the verdict to manslaughter was denied. After waiving sentencing delays, the defendant was sentenced to life imprisonment without benefit of probation, parole, or suspension of sentence. This appeal followed.
DISCUSSION
The defendant’s sole assignment of error is that he was prejudiced by the state’s improper introduction of evidence of prior bad acts by him.
The defendant argues that the trial court abused its discretion in allowing evidence of his participation in the Family Dollar and Texaco robberies to be introduced at trial because neither had any relevance to the issue of whether he had the specific intent to kill or inflict great bodily harm upon the victim.[3]
The state responds that the evidence of the Texaco robbery was proper under res gestae and evidence of the Family Dollar robbery and the shots fired therein were relevant to address Cooley’s assertion that he had fired at Matthew Robert only in self-defense. In the alternative, the state argues that if the evidence was improperly admitted, it was harmless in light of the other overwhelming evidence establishing defendant’s guilt. We agree with the state’s arguments.
IfiThe law pertinent to evidence of other crimes is well settled.[4]
*1099 |7The evidence at trial established that the attempted robbery at Max’s Pawn Shop was the culmination of a crime spree in which defendant was repeatedly trying, and repeatedly failing, to get his hands on cash.
At the Family Dollar Store, the defendant was able to obtain only a purse containing a few dollars.
At the Texaco station, his efforts to steal money were again frustrated when an alert store clerk locked him out of the building. He then accosted a patron at the gas pumps, stealing the Cadillac he used to drive to Max’s Pawn Shop.
At the pawn shop, he shot the victim either because he didn’t immediately comply with the defendant’s demand for money or because the defendant believed the victim to be reaching for a weapon. Under either theory, the defendant was guilty of second degree murder. To have disallowed evidence of either crime occurring that day would have deprived the state’s case of its “narrative momentum and cohesiveness.” [5]
The state has not argued that the robbery at the Family Dollar constitutes part of the res gestae. Instead, it urges that testimony about this incident countered defendant’s contention that he shot the victim only because he believed he was reaching for a gun. According to the state, the fact that just a short time prior to Robert’s murder, the defendant had aimed and fired his gun at the clerk of another store was probative evidence that the victim need not have been reaching for anything for the defendant to have fired his gun at him.
| sSelf-defense was unavailable to the defendant under La. R.S. 14:21 because he was the aggressor in the conflict. We cannot conclude that the trial court abused its discretion in admitting the prior crimes evidence. Even -if the trial court was in error, it was harmless error. The evidence of guilt was overwhelming.
Tory Jackson identified the defendant as the person who killed Matthew Robert. Jackson testified that the defendant had demanded money from the victim. When the robber did not immediately get the money, he pointed the gun at the victim and shot him in the chest. The events were caught on surveillance video which shows the defendant raise the gun chest high and fire. When Cooley was arrested, he was in possession of the murder weapon. It is remote in the extreme that Cooley’s conviction is attributable to the other crimes evidence, properly admitted or not.
*1100 This conviction is clearly and amply supported by the record.
ERROR PATENT
We hereby notify the defendant of the time limitations pertinent to any applications for post-conviction relief.[6]
DECREE
The defendant’s conviction and sentence are AFFIRMED.

. The defendant also admitted the shooting to his cousin, Randy McGill, indicating to both Edwards and McGill that he thought the victim was reaching for a gun.

. State v. Prieur, 277 So.2d 126 (La.1973).

. The state prosecuted under La. R.S. 14:30.1(A)(1), requiring proof of the specific intent to kill or inflict great bodily harm. The state did not also prosecute in the conjunctive under "felony murder,” La. R.S. 14:30.1(A)(2), which would have allowed a conviction for second degree murder without the necessity of proving specific intent to kill or inflict great bodily harm, if it were proven that the killing occurred during the perpetration or attempted perpetration of any of 15 enumerated felonies, including all four of the robbery crimes in Title 14.

. The Louisiana Supreme Court recently held in State v. Odenbaugh, 2010-0268, pp. 52-54 (La. 12/6/11), 82 So.3d 215, 250-251, as follows (with citations omitted):
Generally, evidence of other crimes, wrongs, or acts committed by the defendant is inadmissible due to the "substantial risk of grave prejudice to the defendant.” Under LSA-C.E. art. 404(B)(1), however, such evidence may be admitted for the purpose of showing “motive, opportunity, intent, preparation, plan, knowledge!/]” Evidence of other bad acts is not admissible simply to prove the bad character of the accused. Furthermore, the other crimes evidence must tend to prove a material fact genuinely at issue, and the probative value of the extraneous crimes evidence must outweigh its prejudicial effect.
Under Louisiana Code of Evidence Art. 404(B), other crimes evidence is also admissible "when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding." For other crimes to be admissible under this exception, they must bear such a close relationship with the charged crime that the indictment or information as to the charged crime can fairly be said to have given notice of the other crime as well. Thus, evidence of other crimes forms part of the res gestae when said crimes are related and intertwined with the charged offense to such an extent that the state could not have accurately presented its case without reference to it. It is evidence which completes the story of the crime by showing the context of the happenings. Evidence of crimes committed in connection with the crime charged does not affect the accused’s character because the offenses are committed as parts of a whole. The inquiry to be made is whether the other crime is "part and parcel” of the crime charged, and is not offered for the purpose of showing that the accused is a person of bad character.
The res gestae doctrine in Louisiana is broad and includes not only spontaneous *1099 utterances and declarations made before or after the commission of the crime, but also testimony of witnesses and police officers pertaining to what they heard or observed during or after the commission of the crime if a continuous chain of events is evident under the circumstances. In addition, as this Court has observed, integral act (res gestae) evidence in Louisiana incorporates a rule of narrative completeness without which the state's case would lose its “narrative momentum and cohesiveness, ‘with power not only to support conclusions but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict.’ ”
In addition, the trial judge has wide discretion in determining the relevancy of evidence, and its ruling on the admissibility of other crimes evidence will not be overturned absent a clear showing of an abuse of discretion. State v. Scales, 93-2003 (La.5/22/95), 655 So.2d 1326, cert. denied; State v. Cooks, 36,-613 (La.App.2d Cir.12/4/02), 833 So.2d 1034.
The improper admission of other crimes evidence is subject to review for harmless error, and the admission will be deemed harmless if the verdict is "surely unattributable to the error.” State v. Odenbaugh, supra; State v. Parker, 42,311 (La.App.2d Cir.8/15/07), 963 So.2d 497, writ denied, 2007-2053 (La.3/7/08), 977 So.2d 896.

. See State v. Odenbaugh, supra, at fn. 4.

. At sentencing, the trial court did not advise the defendant of the time period within which to apply for post-conviction relief. La. C. Cr. P. art. 930.8(C) is supplicatory language which does not bestow an enforceable right on an individual defendant. State v. Brumfield, 2009-1084 (La.9/2/09), 16 So.3d 1161; State v. Hunter, 36,692 (La.App.2d Cir. 12/20/02), 834 So.2d 6. This Court hereby advises the defendant that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C. Cr. P. arts. 914 or 922. See State v. Pugh, 40,159 (La.App.2d Cir.9/21/05), 911 So.2d 898.