STONE, J.
liThe defendant, Robert Young, Jr., (“Young”) was charged by amended bill of information with possession with intent to distribute a Schedule II controlled dangerous substance (crack cocaine), pursuant to La. R.S. 40:967(A)(1). After a jury trial, Young was found guilty as charged. Young was sentenced to 14 years at hard labor, the first two years of which were ordered to be served without the benefit of parole, probation, or suspension of sentence. For the following reasons, Young’s conviction and sentence are affirmed.
FACTS
On November 18, 2014, Agent John Edward Witham (“Agent Witham”) and Agent Earlton John Parker (“Agent Parker”), officers with the Caddo-Shreveport Narcotics Task Force, were patrolling the Mooretown area of Shreveport in response to a complaint of drug activity. While patrolling, the agents observed a white Toyota pickup truck in the ,6300 block of Tinker Street partially parked in a driveway at the end of the dead-end street. As Agents Witham and Parker approached the truck, they observed three individuals exit the truck.
The individuals identified themselves as Timothy Newton (“Newton”), the driver, Kathy Sloan (“Sloan”), the front passenger, and Young, who had been seated in *238 the rear passenger side of the truck. Agent Witham obtained consent from Newton to search the truck. Sloan was directed to stand near the rear passenger side of the truck and Young was directed to stand near the front passenger side. During the search, Agent Witham discovered a black RG .32 caliber revolver on the floorboard of the rear passenger seat of the truck. It was loaded with six .32 caliber bullets. 12While Agent Witham continued the search, Agent Parker walked over toward Young, who was still standing near the front of the truck, and noticed a pair of rolled-up black gloves on the ground near Young’s feet. Agent Parker picked up the gloves and unrolled them. Both Agent Parker and Agent Witham observed that the gloves contained 15 plastic bags, each filled with what was later identified as crack cocaine.
Agent Witham proceeded to give Newton, Sloan and Young their Miranda rights. Upon questioning, all three denied having any knowledge of the firearm or the drugs. Shortly thereafter, Young admitted to Agent Witham that the firearm belonged to his late father and he kept it for his protection. According to Young, he had been robbed two weeks earlier. Young also told Agent Witham that the drugs found in the gloves belonged to him, and that he had intended to sell the drugs because he needed money. Young was subsequently arrested. Newton and Sloan were released. Young was charged by an amended bill of information with one count of possession with intent to distribute a Schedule II controlled dangerous substance (crack cocaine) pursuant to La. R.S. 40:967(A)(1).
During Young’s jury trial, Agent Wit-ham recounted the events of November 18, 2014, as stated above. Agent Witham also testified that he did not pat down Young, Newton, or Sloan. According to Agent Wit-ham, after Young, Newton, and Sloan initially denied knowledge of the firearm or drugs, Young approached him and confessed to possession of the firearm and drugs. On cross-examination, Agent Witham stated he did not see Young in possession of the gloves nor did he witness Young making any land of throwing motion to suggest that he was disposing of anything.
|sAgent Parker provided a summary of the November 18, 2014, incident similar to that of Agent Witham. Agent Parker testified that, after all three individuals originally denied knowledge of the firearm or drugs, he saw Young walk up to Agent Witham while he was doing paperwork and heard Young’s confession to Agent Wit-ham. On cross-examination, Agent Parker stated that he did not see the gloves on the ground before he directed Young to stand near the front of the truck.
Lieutenant Carl Townley (“Lieutenant Townley”), an expert in the field of drug sales, and packaging, sales, use and distribution of cocaine, testified that the evidence and surrounding circumstances supported his conclusion that Young was in possession of the cocaine with the intent to distribute it. Lieutenant Townley explained that he based his opinion on the way the drugs were packaged; the amount of drugs in each baggie; the firearm, because it is common for drug dealers to carry firearms; and, the lack of paraphernalia associated with using drugs (e.g., needles or smoking pipes). Lieutenant Townley also testified that it would be uncommon for someone just to leave and abandon that amount of drugs on the ground.
Sloan testified as the defense’s sole witness. According to Sloan, the officers approached her, Young, and Newton with their guns drawn and ordered them out of the car. After they exited the vehicle, the officers handcuffed them and patted them *239 down. Sloan said that neither she nor Young had black gloves and that she did not see a pair of black gloves on the ground near the truck. Sloan also testified that Young did not walk over to Agent Witham voluntarily, but that Agent Wit-ham called Young over to him. On cross-examination, Sloan conceded that she could not hear the conversation between Young and Agent Witham.
14The jury found Young guilty as charged.[1] Thereafter, Young was sentenced to 14 years at hard labor, with the first 2 years to be served without the benefit of parole, probation, or suspension or sentence. Young did not file a motion to reconsider sentence. He now appeals.
DISCUSSION

Improper Admission of Evidence

During Agent Witham’s testimony, Young’s counsel made an objection and requested his objection be heard and addressed outside the presence of the jury. After the jury was excused, Young’s counsel contended that Agent Witham was getting ready to testify that he found a weapon in the vehicle. Young’s counsel argued that Young was not being charged with possession of the weapon and that the presence of the weapon in the car was irrelevant to the case. According to Young’s counsel, testimony and evidence regarding the gun would prejudice the jury against Young because the gun would “make [the jury] think that he’s a dangerous person or ... that somehow the weapon was involved in this case.”
After hearing arguments from both parties, the trial judge held that the evidence and testimony about the firearm found in the car was admissible. Young’s counsel maintained his objection to the trial court’s ruling throughout trial.
Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. La. C.E. Art. 401.
| r,Generally, evidence of other acts of misconduct is inadmissible because it creates the risk that the defendant will be convicted of the present offense simply because the unrelated evidence establishes him or her as a “bad person.” La. C.E. Art. 404(B)(1); State v. Jackson, 625 So.2d 146, 148 (La. 1993). This rule of exclusion stems from the “substantial risk of grave prejudice to the defendant” from the introduction of evidence regarding his unrelated criminal acts. State v. Prieur, 277 So.2d 126,128 (La. 1973).
Evidence of other crimes may be admissible if the state establishes an independent and relevant reason, i.e., to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding. La. C.E. Art. 404(B)(1); State v. Roberson, 40,809 (La. App, 2 Cir. 04/19/06), 929 So.2d 789.
This Court, quoting the Supreme Court’s ruling in State v. Odenbaugh, 10-0268 (La. 12/06/11), 82 So.3d 215, outlined the rule for introducing such res gestae evidence:
For other crimes to be admissible under this exception, they must bear such a close relationship with the charged crime that the indictment or information *240 as to the charged crime can fairly be said to have given notice , of the other crime as well. Thus, evidence of other crimes forms part of the res gestae when said crimes are related and intertwined with the charged offense to such an extent that the state could not have accurately presented its case without reference to it. It is evidence which completes the story of the crime by showing the context of the happenings. Evidence of crimes committed in connection with the crime charged does not affect the accused’s character because the offenses are committed as parts of a whole. The inquiry to be made is whether the other crime is “part and parcel” of the crime charged, and is not offered for the purpose of showing that the accused is a person of bad character. The res gestae doctrine in Louisiana is broad and includes not only spontaneous utterances and declarations made before or |flafter the commission of the crime, but also testimony of witnesses and police officers pertaining to what they heard or observed during or after the commission of the crime if a continuous chain of events is evident under the circumstances. In addition, as this Court has observed, integral act (res gestae) evidence in Louisiana incorporates a rule of narrative completeness without which the state’s case would lose its “narrative momentum and cohesiveness, ‘with power not only to support conclusions but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict.’ ”
State v. Cooley, 47,087 (La.App. 2 Cir. 05/16/12), 92 So.3d 1095, 1098, writ denied, 12-1395 (La. 01/11/13), 106 So.3d 546. Even when the other crimes evidence is offered for a purpose allowed under La. C.E. Art. 404, the evidence is not admissible unless it tends to prove a material fact at issue or to rebut a defense. State v. Rose, 06-0402 (La. 02/22/07) 949 So.2d 1236, 1243.
A trial judge is vested with wide discretion in determining relevance of evidence; his ruling on the admissibility of other crimes evidence will not be overturned absent a clear showing of abuse of discretion. State v. Scales, 93-2003 (La. 05/22/95), 655 So.2d 1326, cert. denied, 516 U.S. 1050, 116 S.Ct. 716, 133 L.Ed.2d 670 (1996); State v. Cooks, 36, 613 (La.App. 2 Cir. 12/04/02), 833 So.2d 1034.
Young argues the trial court erred in admitting other crimes evidence of a firearm at trial. Young asserts that the trial court erred in finding that the firearm was admissible as integral acts evidence under La. C.E. 404(B). In response, the state argues that admission of evidence and testimony about the firearm was proper under the res gestae exception in La. C.E. Art. 404(B).
It is well established in Louisiana that firearms and drugs frequently go hand-in-hand. State v. Warren, 05-2248 (La. 02/22/07)17, 949 So.2d 1215, 1229. (To substantial dealers .in narcotics, firearms are as much tools of the trade as are most common recognized articles of drug paraphernalia.) See also State v. Allen, 15-231 (La. App. 5th Cir. 10/14/15), 177 So.3d 771, 781.[2] For this reason, Louisiana courts permit evidence of weapons and drugs under the res gestae exception found in La, *241 C. E. Art. 404(B). Applying the rules and rationale regarding the admissibility of integral acts evidence, the Supreme Court in State v. Colomb, 98-2813 (La. 10/1/99, 4), 747 So.2d 1074, 1076, explained:
[Evidence of the defendant’s marijuana possession contemporaneous with the police discovery of the firearm in his truck provided not only narrative completeness to a case which began as a narcotics stop but also formed an integral part of the context facts in which jurors evaluated the state’s case—
In the instant matter, this Court finds no error by the trial court regarding the admissibility of testimony about issue with the admission of the firearm. The evidence of the firearm in Newton’s car was relevant insofar as it completed the narrative of Young’s arrest and provided circumstantial evidence with which the jury could evaluate Young’s exercise of dominion and control over the cocaine found on the ground. Furthermore, the firearm was relevant to show Young’s intent to distribute the cocaine.
Even if the firearm was improperly admitted, the admission is subject to review for harmless error, and will be deemed harmless if the verdict is surely unattributable to the error. Odenbaugh, supra-, State v. Parker, 42,311 (La.App. 2 Cir. 1 s08/15/07), 963 So.2d 497, writ denied, 07-2053 (La. 03/7/08), 977 So.2d 896. This Court finds that even if the trial court erred in allowing testimony and evidence related to the revolver, such error was harmless. The evidence against Young, including the testimony of Agents Witham and Parker and Young’s admission to the crime, was sufficient to support the jury’s verdict. Young’s argument is without merit.

Admission of Witness’s Criminal History

Young next argues the state improperly questioned Sloan about her criminal history. The following questioning and testimony occurred during Sloan’s cross-examination by the state:
DISTRICT ATTORNEY: Okay. And going through your criminal history, I just need to check on this, you have a prior arrest for possession of Schedule II; is that correct?
SLOAN: The charges were dropped.
DEFENSE COUNSEL: Objection, Your Honor.
DISTRICT ATTORNEY: Sorry, conviction of possession of Schedule II?
SLOAN: The charges were dropped.
DISTRICT ATTORNEY: From 1993?
⅜ * *
DISTRICT ATTORNEY: What were they dropped to?
SLOAN: I’m sorry?
DISTRICT ATTORNEY: You said they were dropped.
SLOAN: You said ’93?
DISTRICT ATTORNEY: Yes, ma’am.
SLOAN: That was not me. ’93 where? Here in Shreveport?
^DISTRICT ATTORNEY: Yes ma’am. In Caddo Parish.
SLOAN: Are you sure it was me? I don’t remember having a conviction in ’93.
Thereafter, the state continued to question Sloan about her criminal history. Sloan continuously denied conviction of any crime in Caddo Parish in 1993. Sloan was also questioned about a 2003 conviction of delivery of a controlled dangerous substance in Shreveport, which she denied. However, Sloan did admit to a delivery of cocaine conviction in Kansas City, but stated the conviction had been expunged.
*242 La. C.E. Art. 609.1 places guidelines on the impeachment of a witness in a criminal proceeding with evidence of a prior conviction. See also State v. Henderson, 12-2422 (La. 01/04/13), 107 So.3d 566, 568.
La. C.E. Art. 609.1, states in pertinent part:
A. General criminal rule. In a criminal case, every witness by testifying subjects himself to examination relative to his criminal convictions, subject to limitations set forth below.
B. Convictions. Generally, only offenses for which the witness has been convicted are admissible upon the issue of his credibility, and no inquiry is permitted into matters for which there has only been an arrest, the issuance of an arrest warrant, an indictment, a prosecution, or an acquittal.
C. Details of convictions. Ordinarily, only the fact of a conviction, the name of the offense, the date thereof, and the sentence imposed is admissible. However, details of the offense may become admissible to show the true nature of the offense:
1. When the witness has denied the conviction or denied recollection thereof—
Information about a witness’s convictions can form an important source for impeachment of such witnesses. State v. Bratton, 49,434 (La.App. 2 Cir. 01/14/15), 161 So.3d 937, 945, writ denied, 15-0303 (La. 11/20/15), 180 So.3d 317. However, in criminal cases, “only an offense for which the witness has been convicted is admissible on the issue of credibility, and no inquiry is permitted into matters for which there has only been an arrest ... or an acquittal.” State v. Jackson, 629 So.2d 1374, 1382 (La. App. 2d Cir. 1993), writ denied, 637 So.2d 1046 (La. 1994).
In State v. Akins, 96-414 (La.App. 3 Cir. 12/11/96), 687 So.2d 489, the third circuit discussed the effect of a technical error, under La. C.E. Art. 609.1, made by counsel during impeachment of a witness:
In State v. Johnson, 94-1379 (La. 11/27/95), 664 So.2d 94 .... during the prosecution’s impeachment of the defendant, the prosecution misstated the true nature of defendant’s convictions, referring to the crimes for which the defendant had been charged rather than the crimes for which the defendant had actually been convicted. The prosecutor in the present case was not in error in stating that the accused had prior drug convictions, but rather his error was a mere technical misstatement of the crimes for which the defendant had been convicted. As such, it could not have contributed to defendant’s verdict.
Id. at 492-93. When a witness denies a conviction, La. C.E. Art. 613 authorizes the state to introduce extrinsic evidence of the conviction. While the state is not required to introduce positive evidence that the conviction exists, the state must have a credible factual basis for the line of questioning. State v. Selvage, 93-1435 (La.App. 1 Cir. 10/07/94), 644 So.2d 745, 751, writ denied, 94-2744 (La. 03/10/95), 650 So.2d 1174.
As with most evidentiary rules, the admissibility of a witness’s prior convictions and any extrinsic evidence is subject to the balancing test required by La. C.E. Art. 403. State v. Tolbert, 03-0330 (La. 06/27/03), 849 So.2d 32, 38. A trial court is afforded great discretion in controlling the scope and extent of cross-examination and its rulings will not be disturbed | absent a finding of an abuse of discretion. State v. Coleman, 32,906 (La.App. 2 Cir. 04/05/00), 756 So.2d 1218, 1244. Improper questioning under La C.E. Art. 609.1 is subject to *243 harmless error analysis. Johnson, supra,-, Bratton, supra.
From the record, the state’s questions to Sloan about a previous arrest, which was immediately corrected, appears to be precisely the type of technical misstatement described in Akins, supra, and Johnson, supra. The transcript also suggests that the prosecutor was looking at or relying on something when he asked Sloan about her criminal history, making the following statements during cross-examination of Sloan: “... [G]oing through your history, I just need to check on this ... ”; “is this your social security number?”; “And maybe I’m reading it off wrong, or there’s a misunderstanding—”
Without any evidence to the .contrary, the state had a good faith basis for questioning Sloan about her previous criminal history. In addition, Young’s contention that the state did not publish or otherwise enter into evidence any documentation is inapposite. Finally, as noted correctly by the state in its appellate brief, any error during the cross-examination of Sloan was harmless. While Sloan’s testimony differed considerably from that of Agents Witham and Parker, Sloan admitted that she did not hear Young’s conversation with Agent Witham and therefore could not refute the officers’ testimony.

Improper State Rebuttal

Finally, Young claims the prosecutor’s argument in rebuttal was improper, specifically that the state’s remarks comparing defense counsel to |12a squid were “highly inflammatory and derogatory.” The following interaction occurred during the state’s rebuttal to defense counsel’s closing argument:
DISTRICT ATTORNEY: The Defense Attorney’s job in this case is, basically, to act like a squid. I know we’re all familiar with a squid. Some are large, some are small, but they have one big defense mechanism, and that defense mechanism is to squirt you when they are afraid so that they can have a cloud to, basically, get away unharmed.
And so, when he gets up in here and he argues—gets up here and he argues—
DEFENSE COUNSEL: Objection, Your Honor.
COURT: I think it is argument. She can argue.
DEFENSE COUNSEL: Well, Your Honor, the prosecution has made a closing argument. I have made a closing argument. I think her closing argument right at this point is in rebuttal and would be restricted to anything that I talked about.
COURT: You need to get on with rebutting what he had to say.
DISTRICT ATTORNEY: I am. That’s exactly what I’m doing, Your Honor. And my point in saying that is he’s got to murky the water. He’s got to put forth his argument to cloud the issues at hand—
After closing arguments, the trial court instructed the jury that the arguments made by counsel were made to assist the jury in deliberations, but that those statements should not be considered as evidence. Young contends | 13that the remarks created prejudice against Young and likely influenced the jury.
Louisiana C.Cr. P. Art. 774 sets forth the permissible scope of closing argument:
The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
The argument shall not appeal to prejudice.
*244 The state’s rebuttal shall be confined to answering the argument of the defendant.
Certain remarks made during closing argument require the trial court to order a mistrial. La. C.Cr. P. Art. 770. If the comments made during closing arguments do not fall under the provisions of La. C.Cr. P. Art. 770, then, upon request of either the state or the defense, the trial court shall admonish the jury. La. C.Cr. P. Art. 771.
Even if the prosecutor exceeds the permissible scope of closing argument, “much credit should be accorded to the good sense and fair-mindedness of jurors who have seen the evidence and heard the argument, and have been instructed repeatedly by the trial judge that arguments of counsel are not evidence.” State v. Mitchell, 94-2078 (La. 05/21/96), 674 So.2d 250, cert. denied, 519 U.S. 1043, 117 S.Ct. 614, 136 L.Ed.2d 538 (1996)).
The trial judge has broad discretion in controlling the scope of closing arguments. State v. Paul, 15-501 (La. App. 5th Cir. 01/27/16), 185 So.3d 188, 203. A court will not reverse a conviction unless “thoroughly convinced that the argument influenced the jury and contributed to the verdict.” State v. Frank, 99-0553 (La. 05/22/07), 957 So.2d 724, 741.
| uWhile the analogy made by the state is frowned upon, reviewing courts regularly find that the comparisons, in and of themselves, do not warrant a mistrial or otherwise rise to the level of reversible error. The evidence presented at trial combined with the fact that the trial court instructed the jury that the statements and arguments of counsel were not evidence, support the determination that the jury was not swayed or otherwise improperly influenced by the analogy. Young’s argument is without merit.

Error Patent

Our review of the record revealed one error patent. The trial court failed to advise Young of the time within which to apply for post-conviction relief pursuant to La. C. Cr. P. Art. 930.8. The correct time period for Young to seek post-conviction relief is two years from the date his conviction and sentence become final. We hereby advise Young that he has two years from the date his conviction and sentence become final to apply for post-conviction relief.
CONCLUSION
For the foregoing reasons, the conviction and sentence of Robert Young, Jr., are affirmed.
AFFIRMED.

. Young made an oral motion for new trial on November 2, 2015, which was subsequently denied.

. See also United States v. Nguyen, 317 Fed. Appx. 424, 428 (5th Cir, 2009). (Firearms are considered “tools of the trade” in drug trafficking offenses and are relevant intrinsic proof of an ongoing conspiracy ... This court recently reiterated this conclusion in a drug trafficldng case where the amount and street value of the drugs made the possession of firearms foreseeable.) See United States v. Cisneros-Gutierrez, 517 F.3d 751, 766 (5th Cir. 2008).